Paul MARTIN and Carolyn Martin, husband and wife, Appellants (Defendants),

v.

George H. WING and Jermine L. Wing, husband and wife, Appellees (Plaintiffs).

No. 83–47.

Supreme Court of Wyoming.

Aug. 18, 1983.

Michael K. Shoumaker, Mark Murphy and James N. Wolfe, Sheridan, for appellants.

Rex O. Arney, Sheridan, for appellees.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

ROONEY, Chief Justice.

This appeal is from a judgment, after a trial to the court, awarding appellees damages, court costs and $1.00 punitive damages. The trial court found that appellants had interfered with appellees' prospective contractual relationship with Mr. and Mrs. Charles Thomson who intended to purchase appellees' property.

Appellants word the issues on appeal as follows:

"I. Whether a Valid Contract Relationship or Business Expectancy Existed.

"II. Whether the Martins Had Sufficient Knowledge of the Contract or Business Expectancy.

"III. Whether There Was Intentional Interference Which Terminated the Business Expectancy.

"IV. Whether the Amount of Damages Awarded Was Excessive."

We affirm.

In early 1979 appellees had a house constructed on property they owned adjacent to appellants' property in Story, Wyoming. The house was built for speculative purposes. When the house was substantially

completed a for-sale sign was posted on the property and the property was listed with a real estate sales company.

In April, 1980, the Thomsons entered into a written offer to purchase the property contingent upon the sale of their home. The offer lapsed when they were unable to sell their home. Nevertheless, the Thomsons remained in contact with appellees, and after sale of other assets, the Thomsons had sufficient money for purchase of the property. In July, 1980, Mrs. Thomson prepared a purchase contract and she and Mr. Thomson traveled to Story to complete the transaction.

As a final preparatory step to entering into the contract, the Thomsons, together with two friends, inspected the property on the morning of July 12, 1980. At that time, they were approached by the appellants. Appellant Paul Martin spoke with Mr. Thomson. Appellant Carolyn Martin spoke with Mrs. Thomson.

Mr. Martin explained that he and his wife were entering the produce business and were constructing a 40′ × 60′ steel building adjacent to appellants' property. Fill dirt to level appellants' land with the adjacent road was being dumped on the property at that time. Mr. Martin said that there was a great deal of flooding on appellees' property and that the water got as high as the bottom of the window on appellees' house.

Mrs. Martin conveyed information to Mrs. Thomson concerning the construction of the produce building similar to that said by Mr. Martin. Mrs. Martin also told Mrs. Thomson that appellees' property flooded every spring; that the snow was so bad the property was inaccessible in winter; and that the septic system for the house had not been approved.

Appellants did construct a steel building on the property. However, appellee George Wing testified that there had never been a problem with flooding and that the septic system was designed by the county engineer and had been inspected and tested.

Because of the statements made by appellants to the Thomsons, the Thomsons refused to enter into the contract for purchase of appellees' property and this action resulted.

## EXISTENCE OF A VALID CONTRACT RELATIONSHIP OR BUSINESS EXPECTANCY

■ Appellants' contention that the existence of a valid contract is necessary for appellees to recover is not in accord with Wyoming law. A contract had not yet been entered into in this case. However, a valid contract is not always necessary. In *Wartensleben v. Willey*, Wyo., 415 P.2d 613 (1966), we recognized that intentional interference with prospective contractual relations, without justification, creates liability for the harm caused thereby.

"Appropriately labeled, plaintiff is seeking relief for 'interference with prospective advantage,' as opposed to 'interference with contractual relations.' Prosser, Law of Torts, §§ 129 and 130 (4th Ed. 1971). These separate causes of action tend to merge, except that the latter is aimed at the protection of the 'probable expectancies' of life, such as future contractual relations. Prosser, supra, § 130, at 950. The Court of Appeals of Washington, in *Olson v. Scholes*, 17 Wash.App. 383, 563 P.2d 1275, 1279–1280, summarized the elements of such actions—while at the same time implicitly indicating how the actions arise from common foundations—as follows:

" '. . . The theory advanced is that stated in Restatement of Torts § 766 (1939), as follows:

" ' . . . [O]ne who, without a privilege to do so, induces or otherwise purposely causes a third person not to

"[']( a) perform a contract with another, or

"[']( b) enter into or continue a business relation with another

"[']is liable to the other for the harm caused thereby.

"[']The tort as defined in the Restatement is divided into two parts: (a) dealing with the cause of action arising when a third person induces a breach of contract, and (b) dealing with the cause

of action which arises when a third person induces one person not to enter into a contract with another. The first subsection deals with present relationships, and the second with future relationships. The elements of the tort have been stated as:

"['](1) the existence of a valid contractual relationship or business expectancy;

"['](2) knowledge of the relationship or expectancy on the part of the interferor;

"['](3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and

"['](4) resultant damage to the party whose relationship or expectancy has been disrupted.

"[']See *King v. Seattle,* 84 Wash.2d 239, 525 P.2d 228 (1974); *Scymanski v. Dufault,* 80 Wash.2d 77, 491 P.2d 1050 (1971); *Corinthian Corp. v. White & Bollard, Inc.,* 74 Wash.2d 50, 442 P.2d 950 (1968), and *Calbom v. Knudtzon,* 65 Wash.2d 157, 396 P.2d 148 (1964), inter alia.'

"See, also, 45 Am.Jur.2d, Interference, §§ 50 and 51; and 86 C.J.S. Torts § 43." *Board of Trustees of Weston County School District No. 1, Weston County v. Holso,* Wyo., 584 P.2d 1009, 1016–1017, reh. denied 587 P.2d 203 (1978).

And see *Kvenild v. Taylor,* Wyo., 594 P.2d 972 (1979).

Volume 4, Restatement of Torts 2d, § 766B, p. 20 (1979) defines the tort of intentional interference with prospective contractual relation as follows:

"One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of

"(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or

· "(b) preventing the other from acquiring or continuing the prospective relation."

▮ In this case there was a prospective contractual relation based upon the dealings between appellees and the Thomsons concerning the purchase of appellees' property by the Thomsons.

▮ But appellants contend that the intentional interference with a prospective contractual relation cannot apply where real estate is involved, citing *Bailey v. Banister,* 200 F.2d 683 (10th Cir.1952); *Springer v. Singleton,* 256 Cal.App.2d 184, 63 Cal. Rptr. 770, 27 A.L.R.3d 1220 (1967); *Malevich v. Hakola,* Minn., 278 N.W.2d 541 (1979); and *Williams v. DeMan,* 7 Mich.App. 71, 151 N.W.2d 247 (1967). However, in each of these cases not only was the prospective purchaser without a valid contract to purchase the property, but the party alleged to have interfered with the prospective purchaser's right was found to be exercising an equal right to purchase the property. These cases are distinguishable from this case in that appellants here were outsiders, not interested in purchasing the property and not competing in the market place to purchase the property.

▮ In *Martin v. Phillips Petroleum Company,* Tex.Civ.App., 455 S.W.2d 429 (1970), this distinction was clearly drawn within the context of Texas law requiring that the interference be malicious. While we do not require that the interference be malicious, *Board of Trustees of Weston County School District No. 1,* supra, the analysis is otherwise valid.

" * * * Our courts have also recognized a cause of action for tortious and wrongful interference with advantageous business relationships. *Cooper v. Steen,* 318 S.W.2d 750, 757, (Tex.Civ.App.), no writ hist., and cases there cited. And see *Pope v. Garrett,* 147 Tex. 18, 211 S.W.2d 559. It need not be absolutely certain that the prospective contract would have been made were it not for such interference. A reasonable assurance thereof in view of all the circumstances, is generally sufficient. 86 C.J.S. Torts § 43, p. 959. But where there is no contract, as here, a

party does not have a right to be free from competition, but instead merely has the right to be free from malicious interference with the right to conduct negotiations that have a reasonable probability of resulting in a contract. * * *" 455 S.W.2d at 435.

■ In Wyoming the party has the right to be free from the intentional interference with the right to conduct negotiations that have a reasonable probability of resulting in a contract.

## SUFFICIENT KNOWLEDGE OF THE CONTRACT OR BUSINESS EXPECTANCY ON THE PART OF APPELLANTS

■ Appellants contend that the evidence was not sufficient for a finding that they had knowledge of the prospective contractual relationship—the second element of the tort as set out in *Board of Trustees of Weston County School District No. 1,* supra. This is a factual determination. On appeal we must accept as true the evidence in favor of the successful party, leave out of consideration entirely the evidence of the unsuccessful party that conflicts with that of the successful party, and give the evidence of the successful party every favorable inference that may reasonably and fairly be drawn from it. *Madrid v. Norton,* Wyo., 596 P.2d 1108, 1117 (1979). And "a judgment carries with it every finding of fact supporting the successful party that 'can be reasonably and fairly drawn from the evidence.' *Kvenild,* supra, 594 P.2d at 976." *Plains Tire and Battery Company v. Plains A to Z Tire Co., Inc.,* Wyo., 622 P.2d 917, 920 (1981).

Not only was there a "for-sale" sign on the property for over a year, but appellants approached the Thomsons to initiate a conversation in which the Thomsons said they were considering purchase of the property. There was sufficient evidence of knowledge on the part of appellants of the relationship between appellees and Thomsons.

## THE BUSINESS EXPECTANCY TERMINATED BY INTENTIONAL INTERFERENCE

■ As with appellants' last contention, this contention challenges the sufficiency of the evidence. Appellants contend that the information given by them to the Thomsons was true and that it did not influence the Thomsons in their decision.

Although contradicted by appellants, there was evidence that appellants approached the Thomsons and volunteered the information concerning flooding, the septic system and the problem of access in winter. As already noted, there was evidence that this information was not accurate. Under the circumstances, we cannot disturb the findings of the trial court in this respect.

## EXCESSIVE DAMAGE AWARD

■ Appellees were awarded $7,015.00 "for their interest expense," $1.00 punitive damages and $44.82 court costs. The interest expense awarded by the court was the amount paid by appellees on their construction loans against the property between August 4, 1980 (when the sale of the property to the Thomsons should have closed) and October 1981 (when the appellees, themselves, moved into the house), less the rental payments made under a third-party lease with option to buy, since terminated without exercise of the option.

Appellants contend that interest should be limited to the time preceding the lease-purchase agreement inasmuch as the property was taken off the market at that time. However, such would not compensate for *all* of the damages occasioned by the failure to complete the sale to the Thomsons.

" * * * In tort cases damages are generally awarded in order to compensate claimants for loss. The measure of damages is the amount which will compensate for all the detriment proximately caused by the breach of duty. *Douglas Reservoirs Water Users Assoc. v. Cross,* Wyo., 569 P.2d 1280 (1977). * * *" *Hagar v. Mobley,* Wyo., 638 P.2d 127, 139 (1981).

When the appellees were unable to close on the sale of their property to the Thomsons, their interest expense continued. Since appellees finally decided to use the property for their own, they did not lose any profit.[1] However, they did incur the additional interest expense up until the point they moved onto the property. We cannot say that the award of the interest expense less the rent was improper under the circumstances.

Affirmed.

---

1. Appellee George Wing indicated that he was willing to sell the property to the Thomsons for what he had in it.