WILLARD GIVEN & ASSOCIATES, P.C., Willard W. Given and James B. Given, Appellants (Plaintiffs),

v.

FIRST WYOMING BANK–EAST CHEYENNE, Appellee (Defendant and Third-Party Plaintiff),

Harold Walters and Janice Wright, (Defendants and Third-Party Plaintiffs).

Robert Larson, an individual, and Charles Hunter, an individual, (Third-Party Defendants).

No. 84–306.

Supreme Court of Wyoming.

Sept. 5, 1985.

Rehearing Denied Sept. 30, 1985.

John J. Maier, Torrington, and James A. Stemmler, member in good standing, State Bar of Missouri, St. Louis, Missouri, signed the brief on behalf of appellants; oral argument by Mr. Stemmler.

John C. Patton and Royann Fransen of Carmichael, McNiff & Patton, Cheyenne, signed the brief on behalf of appellee First Wyoming Bank-East Cheyenne; oral argument by Mr. Patton.

A brief was filed, signed by Kenneth G. Vines of Vines, Rideout, Gusea & White P.C., Cheyenne, on behalf of third-party defendants.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

ROONEY, Justice.

This appeal is from a judgment in favor of appellee-defendant after a trial to the court. Appellants-plaintiffs instituted the action against appellee [1] for failure to honor a check drawn on the account of appellant Willard Given & Associates, P.C. (hereinafter referred to as "WGA") upon which the payee was altered and for failure to honor it when presented a second time personally by appellant James B. Given for the purpose of obtaining a cashier's check.[2] Appellants inartfully word the issues on appeal:

1. Two of appellee's officers were also named defendants but were dismissed from the case by appellants at the conclusion of the trial. Issues relative to third-party defendants were not appealed.

2. "A cashier's check is a bill of exchange, drawn by the bank upon itself, and is accepted by the act of issuance. While the only apparent basic or factual difference between a cashier's check and the ordinary check is that the ordinary check is drawn on one other than the drawer, while in a cashier's check both the drawer and the drawee are the same, there are certain differences, some radical, in the incidents and consequences of the two types of checks. A cashier's check is a primary obligation of the bank, rather than the depositor, as in the case of an ordinary check, and a promise to pay which ordinarily cannot be countermanded. It is issued by the authorized officer of a bank, directed to another person, evidencing the fact that the payee is authorized to demand and receive from the bank, upon presentation, the amount of money represented by the check. Cashier's checks, from their peculiar character and general use in the commercial world, are regarded substantially as the money which they represent, a rule that is not extended to ordinary checks of the depositor drawn on his bank." 10 Am.Jur.2d Banks § 544 (1963).
"A cashier's check, since it is merely a bill of exchange drawn by a bank upon itself and is accepted in advance by the act of its issuance, is not subject to countermand like an ordinary check; the relations of the parties to such an instrument are analogous to those of the parties to a negotiable promissory note payable on demand. Thus, since a cashier's check is presumably purchased for a sufficient consideration, it is ordinarily beyond the power of the purchaser or the bank issuing it to stop payment thereon. Once the cashier's check is negotiated to a holder in due course, the credit and resources of the payee are no longer primarily involved; it is then a primary obligation of the bank, and upon presentment of the check for payment, the bank must honor the check. * * *" 10 Am.Jur.2d Banks § 643 (1963).

1. "DID THE TRIAL COURT ERR IN HOLDING THAT FAILURE OF CONSIDERATION WAS A GOOD DEFENSE OF DEFENDANT BANK [APPELLEE] REGARDING ITS REFUSAL TO HONOR ITS CASHIER'S CHECK, SINCE FAILURE OF CONSIDERATION IS AN AFFIRMATIVE DEFENSE WHICH WAS NOT PLEADED BY DEFENDANT BANK [APPELLEE]?"

2. "DID THE TRIAL COURT ERR IN HOLDING THAT FAILURE OF CONSIDERATION WAS A GOOD DEFENSE OF DEFENDANT BANK [APPELLEE] REGARDING ITS REFUSAL TO HONOR ITS CASHIER'S CHECK, SINCE FAILURE OF CONSIDERATION IS AN AFFIRMATIVE DEFENSE WHICH WAS NOT PROVED BY DEFENDANT BANK [APPELLEE]?"

We affirm.

### PLEADING FAILURE OF CONSIDERATION

As already noted, the complaint was premised on failure to honor a check drawn on the account of WGA when presented to appellee on two occasions, not the failure to honor a cashier's check, i.e., a check drawn on the account of appellee bank itself. Although the evidence reflected that appellee had indicated that a cashier's check would be issued to Given or to the Equality State Bank upon the second presentation, the cashier's check never was issued[3] and therefore the refusal complained of was the refusal to issue it as promised rather than any refusal to honor the cashier's check. The complaint did not allege a breach of contract to which an affirmative defense could properly be made.

Evidence concerning the promise to issue the cashier's check and the question of consideration was presented and received at trial without objection, and the court considered the case with reference thereto.

Rule 15(b), W.R.C.P., provides in pertinent part:

"(b) *Amendments to conform to the evidence.*—When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. * * *"

The record reflects full exploration of the promise and consideration by the parties, and none of them were prejudiced by the failure to join issue thereon in the pleadings, as these issues were tried by implied or express consent of the parties and treated as if raised in the pleadings. *Title Guaranty Company of Wyoming v. Midland Mortgage Company*, Wyo., 451 P.2d 798, 801 (1969).

### PROVING FAILURE OF CONSIDERATION

Again, this issue as worded by appellants is not accurate in that the cashier's check was never issued and therefore could not be dishonored. WGA had an account with appellee upon which checks could be drawn by appellant Willard W. Given, appellant James B. Given, Robert Larson and Charles Hunter. When an operating agreement between WGA on the one side and Larson and Hunter on the other side was terminated, appellant James B. Given wrote a check, presigned by Willard W. Given, on the account in the amount of $10,324.57 with appellee as payee. He deposited it in a WGA account at the Equality State Bank on August 16, 1982, after scratching out the payee "First Wyoming

---

3. Section 34–21–302(a), W.S.1977 (U.C.C. § 3–102(1)(a) (1977)), reads in pertinent part:

"(a) In this article unless the context otherwise requires:

"(i) 'Issue' means the first *delivery* of an instrument to a holder or a remitter;" (Emphasis added.)

"This article" refers to Article 3, Commercial Paper, of the U.C.C. Section 34–21–101 et seq., W.S.1977.

Bank East" and writing above it "Equality State Bank." When the check was presented to appellee, it refused to honor the check, stamping it "refer to maker." On August 20, 1982, appellant James B. Given learned that the check had not been honored and asked appellee for an explanation. He was told that if he again presented the check, appellee would exchange it for a cashier's check. He then secured the check and again presented it to appellee.

In the meantime, Hunter and Larson learned of the attempt by Willard W. Given and James B. Given to withdraw the $10,-324.57 from the account and requested appellee to stop payment from the account. Appellee refused to do so unless a lawsuit was filed, whereupon Hunter and Larson did file an action against WGA to prevent payment from the account. Appellee filed an interpleader for a court order concerning disposition of the funds in the account; the funds were ultimately distributed pursuant to a settlement of the interpleader petition. Since then an accounting between Willard W. Given and James B. Given on one side and Hunter and Larson on the other side over termination of the operating agreement between them has been accomplished and settled in another lawsuit.

Appellants do not contest, on appeal, the district court's holding that appellee's refusal to pay the altered check did not constitute a wrongful dishonor.[4] Rather, in the appeal they contend the court erred in not finding the bank liable for refusal to issue the cashier's check. More specifically, appellants complain that appellee did not sufficiently prove failure of consideration to justify the refusal to issue the cashier's check.

When appellee agreed with James B. Given to issue a cashier's check, it was with the obvious expectation that the WGA account would be debited for the amount of the check. When the joint signatories of the account disagreed as to the disposition of the funds in the account, which disagreement resulted in a lawsuit, appellee was placed in the position of potential liability regardless of which of the two alternatives it followed. If it issued the cashier's check and charged the account (making sure that the altered check was returned without payment), Hunter and Larson could contend that appellee acted improperly in the face of their lawsuit, and in the face of their stop-payment order against the check with an altered payee.[5] If it failed to issue the cashier's check, appellants could contend, as they do in this action, that appellee's failure caused damage to them. Appellee did that normally done under such circumstances when it interpleaded the matter in the pending lawsuit.

The disposition of the funds in the WGA account under the settlement eliminated the consideration contemplated for the issuance of the cashier's check. There was no other available money for payment of it. Therefore, the consideration for the

---

4. The district court referred to § 34–21–363(a), W.S.1977, which recites when an instrument is dishonored, and to § 34–21–366, W.S.1977, which lists evidence creating a presumption of dishonor; and it quoted the following from the official comment to § 3–510 of the U.C.C. (§ 34–21–366, W.S.1977):

    "'... [T]he provision only applies where the stamp or writing states reasons for refusal which are consistent with dishonor. *Thus the following reasons for refusal are not evidence of dishonor, but of justifiable refusal to pay or accept.*

    \* \* \* \* \* \*

    *"Payee altered'"* (Emphasis in original.)
    The district court also quoted the following from Brady on Bank Checks, (5th ed., 1979), § 18.1:

    "'[r]eturn for such reasons [altered payee, etc.] should not be regarded as dishonor since the returning bank is, in effect, saying that the check concerned is not a proper or valid order on the bank; but, on the other hand, the bank is in no way declaring that it is refusing payment of a valid item in proper form.'"

5. The attorney for Hunter and Larson conveyed a verbal stop-payment order for them to the bank for this check on August 20, 1982, the day the lawsuit was filed. The funds were distributed through settlement of the lawsuit by September 1, 1982, within fourteen days of the verbal stop-payment order. Section 34–21–472, W.S. 1977, provides that an oral stop-payment order by a bank customer is binding only for fourteen days unless confirmed in writing within that period.

issuance of the cashier's check as contemplated when appellee agreed to issue it was no longer available. Thus, the refusal to issue the cashier's check was justified. A contract must be supported by consideration to be valid and legally enforceable, 17 C.J.S. Contracts, § 71; *Miller v. Miller,* Wyo., 664 P.2d 39, 40 (1983).

The trial court reached this result in a different fashion, but we can affirm the decision for any proper reason appearing in the record. *Valentine v. Ormsbee Exploration Corporation,* Wyo., 665 P.2d 452 (1983). The trial court accepted an exception recognized by some courts that, absent estoppel, a bank may stop payment on its cashier's check where it was issued without consideration and where it has its own defense, not that of the customer. The court then concluded that

"* * * if a bank may stop payment on a cashier's check under certain circumstances, it could refuse to issue the same after agreeing to do so, when these same circumstances arose."

We do not believe it necessary in this case to determine the propriety of stopping payment on a cashier's check which has been issued, leaving that determination for another day and another case.

The simple situation in this case is that there was no money available to pay for the cashier's check, and the appellee bank had no obligation to issue it without receiving the contemplated consideration. The uncontradicted evidence established the fact that the money contemplated to be the consideration for issuance of the cashier's check was no longer available.

Affirmed.