FIRST WYOMING BANK, CASPER, Appellant (Defendant),

Richard Pavlicek and Glenn Deming, (Defendants),

v.

Robert M. MUDGE, Sybil A. Mudge, Edward W. Mudge, and Edna F. Mudge, Appellees (Plaintiffs).

No. 87–52.

Supreme Court of Wyoming.

Jan. 5, 1988.

---

Cameron S. Walker of Schwartz, Bon, McCrary & Walker, Casper, for appellant (defendant).

John R. Hursh, and William L. Miller of Hursh, Miller & Fasse, P.C., Riverton, for appellees (plaintiffs).

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

This is an appeal from an action instituted by Robert M. Mudge, Sybil A. Mudge, Edward W. Mudge, and Edna F. Mudge (Mudges), appellees, by a third-party complaint in response to a foreclosure action instituted by First Wyoming Bank, Casper (Bank), appellant, to foreclose a security interest in a corporate enterprise inventory. This third-party complaint was severed from the original foreclosure action when the earlier decision was appealed and the foreclosure decision affirmed in *M & M Welding v. Pavlicek*, Wyo., 713 P.2d 236 (1986). The third-party complaint alleging intentional interference with a contract by the Bank resulted in a jury verdict for the Mudges of $123,997.33.

We affirm this decision also, as essentially invoking a sufficiency-of-the-evidence inquiry.

Appellant Bank presents the issues for review as trial-court error:

1. Improper instructions to the jury.
2. Failure to grant defendant's motions for a directed verdict.
3. Exclusion of certain evidence.

## I. FACTS

The parties and the facts involved in this appeal are essentially identical to those in *M & M Welding v. Pavlicek*, supra, where the facts are set out in more detail, and only the facts pertinent to this appeal will be highlighted here. On July 31, 1981, the Mudges made an agreement to sell the family corporate welding business to Redding. This written agreement included transfer of the Mudges' stock in M & M Welding, Inc., with inventory, equipment, and the business site real property. Additionally, the document contained a nonencumbrance covenant clause, Section 3(f), which later led to this litigation, and which provided:

"3(f). It is agreed that the assets of M & M Welding, Inc., a Wyoming corporation, or its successor corporation shall

not be mortgaged for more than the presently existing indebtedness without Sellers['] consent until the total purchase price herein agreed to be paid shall have been paid in full. Such consent shall not be unreasonably withheld."

To facilitate the security status of the transaction, the corporate stock was placed in escrow until the buyer completed payments under the contract while operating the business during the purchase payment period.

The sales transaction closed in September, 1981, and the buyer took over the operation of M & M Welding. Almost immediately, he applied to appellant for a loan of $100,000 to cover obligations from other investments. At some time, as evidenced by its inclusion in the Redding loan file, the Bank's lending officers had been given an unsigned copy of the purchase agreement that contained the nonencumbrance covenant. The date when the Bank actually received the agreement is disputed, as well as by whom it was seen. In any event, no encumbrance consent was ever obtained from the Mudges, and the Bank took a security interest in the inventory and equipment for the purpose of securing a first priority upon loan default.

Subsequently, Redding did go into default on his purchase payments, causing the Mudges to cancel the sales agreement and in August, 1982 reclaim the M & M stock from escrow. The Mudges first became aware of the security agreement given by Redding to the Bank when the Bank made foreclosure claim to the inventory and equipment as a result of the disputed security agreement, which action effectively shut down M & M Welding. To free up their collateral and be able to continue the business, the Mudges individually put up a letter of credit for $100,000, which was substituted for the property which was the subject of the pending bank foreclosure action. The Bank subsequently drew down the letter of credit. The Bank won the first go-around in *M & M Welding v. Pavlicek*, supra, but in the second round, now here on appeal, lost the jury verdict on a theory of intentional interference with a contractual relationship for the amount of the letter of credit, purchase cost, and interest.

## II. INTENTIONAL INTERFERENCE RULE IN WYOMING LAW

This court has adopted the Restatement (Second) of Torts, § 766, p. 7 (1979) definition of the tort of intentional interference with a contract:

" ' "One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." ' " *Davenport v. Epperly*, Wyo., 744 P.2d 1110, 1111 (1987), quoting *Toltec Watershed Improvement District v. Johnston*, Wyo., 717 P.2d 808, 813–814 (1986).

See also *Allen v. Safeway Stores, Inc.*, Wyo., 699 P.2d 277, 280 (1985).

It is well established in Wyoming that the elements of a claim of tortious interference with a contract that the plaintiff must prove are: (1) the existence of the contract; (2) the defendant's knowledge; (3) intentional and improper interference inducing or causing a breach; and (4) resulting damages. *Davenport v. Epperly*, supra; *Texas West Oil and Gas Corporation v. Fitzgerald*, Wyo., 726 P.2d 1056, 1062 (1986); *Toltec Watershed Improvement District v. Johnston*, supra, 717 P.2d at 813–814; *Erickson v. Magill*, Wyo., 713 P.2d 1182, 1186 (1986); *Dehnert v. Arrow Sprinklers, Inc.*, Wyo., 705 P.2d 846, 850 (1985); *Allen v. Safeway Stores, Inc.*, supra, 699 P.2d at 280; *Martin v. Wing*, Wyo., 667 P.2d 1159, 1162 (1983); *Basin Electric Power Cooperative–Missouri Basin Power Project v. Howton*, Wyo., 603 P.2d 402, 404 (1979); *Kvenild v. Taylor*, Wyo., 594 P.2d 972, 977 (1979); *Board of Trustees of Weston County School District No. 1 v. Holso*, Wyo., 584 P.2d 1009, 1016–1017, reh. denied 587 P.2d 203 (1978).

### III.  JURY INSTRUCTION

■   Appellant argues that it was error to give to the jury Instruction No. 3:

"In this case, the Plaintiffs have the burden of proving by a preponderance of the evidence the following:

"(1) The existence of a valid contractual relationship;

"(2) knowledge of the contractual relationship on the part of the Defendant; and

"(3) intentional and improper interference by the inducing or otherwise causing a breach of the relationship;

"(4) which resulted in damage to the Plaintiffs."

We would disagree, since this instruction correctly recites the Restatement of Torts (Second) § 766 (1979) elements of proof of the tort of intentional interference with contractual relations which this court has previously adopted. *Texas West Oil and Gas Corporation v. Fitzgerald,* supra. The instruction succinctly followed prior Wyoming case law which will not here be rewritten.

### IV.  DIRECTED VERDICT

Appellant next argues that it was erroneous not to grant appellant's motions for a directed verdict because appellees failed to prove damages, lacked standing to sue, and failed to present evidence to satisfy the elements of tortious interference with a contractual relationship.  We disagree. This court in *Cody v. Atkins,* Wyo., 658 P.2d 59, 63 (1983) defined criteria for granting a directed verdict.  The rule is that the test to determine if a motion for directed verdict should be granted is:

"* * * whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached."  9 Wright & Miller, Federal Practice & Procedure:  Civil § 2524, pp. 545–546.

Further, when considering the motion for granting a directed verdict, the evidence will be considered which is favorable to the party against whom the motion is directed, by giving all reasonable inferences to that evidence.  *Texas West Oil and Gas Corporation v. Fitzgerald,* supra; *Carey v. Jackson,* Wyo., 603 P.2d 868 (1979).

■   The appellant argues that there was insufficient evidence presented specifically on the second, third, and fourth elements of the tort, and that therefore his motion for directed verdict should have been granted.  However, the contention is unsustained when the evidence is viewed most favorably to the Mudges as appellees.  Directed to the second element, knowledge of the contract, the Mudges presented testimony through Redding that he gave a copy of the purchase agreement to the Bank's lending officers before the $100,000 note transaction occurred.  Also, more critically, Bordewick, president of the Bank during that time frame, testified as a subpoenaed witness that in his opinion the Bank file reflected knowledge, and:

"Q.  Now, would you expect, as a question of lending policy or banking policy, that if a lender was after a hundred thousand dollar loan and that he had been involved in purchasing a million dollar business, that the bank would in fact want to have access to and examine the agreement that was involved?

"A.  I would think so."

Thus, considering the evidence most favorable to the Mudges, there was sufficient evidence in the record to conclude that the Bank had knowledge of the terms of the purchase agreement from a document to be found in its files which had been provided before it took a security interest in the contractually constrained chattels.

The third element, intentional interference with a contract without justification, is also alleged not to be present because the interference was not improper.  This court recently clarified the definition for improper interference in Wyoming in *Toltec Watershed Improvement District v. Johnston,* supra, 717 P.2d at 814:

"Factors to be considered for the action are listed as follows:

" 'In determining whether an actor's conduct in intentionally interfering

with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:

" '(a) the nature of the actor's conduct,

" '(b) the actor's motive,

" '(c) the interests of the other with which the actor's conduct interferes,

" '(d) the interests sought to be advanced by the actor,

" '(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

" '(f) the proximity or remoteness of the actor's conduct to the interference and

" '(g) the relations between the parties.' Restatement (Second) of Torts, § 766, pp. 26–27 (1979)."

█ Further, this court recognizes Restatement (Second) of Torts, § 773 (1979), that one who interferes with a contract by asserting a bona fide claim in good faith is not liable for tortious interference with contractual relations. *Toltec Watershed Improvement District v. Johnston*, supra. Evidentiary analysis establishes a justified basis for the jury to have found as a predicate for liability that the Bank did not act in good faith in inducing the borrower to violate his purchase agreement so that the lender would obtain priority chattel security for its $100,000 loan. While the Bank's motive to have a first priority in the collateral for loan is not in itself improper, the fact, as the jury concluded, that the Bank knew about the restrictive covenant and then preempted the collateral in requiring the Mudges to post a letter of credit to pay to get their property back, displayed a classic case of the tort of intentional interference with a contractual relation. In simplistic terms, it consisted of inducing the buyer to break his purchase contract terms in order to offer a new loan security priority to the Bank.

█ Next, the argument is made that the real parties in interest were not the Mudges as third-party complainants. The facts do not sustain their argument. The Mudges originally sold and sought protection in sale-price payment by the nonencumbrance clause. Upon repossession, they individually were faced with protection of the reclaimed business, and purchased the letter of credit with attendant cost.

█ Appellant additionally contends that the fourth element, resulting damages, was not proven. Again, we disagree. This argument has the same character and contention found in the real-party-in-interest denial. A party is entitled to all damages which will compensate for all the detriment proximately caused by the breach of the duty. *Texas West Oil and Gas Corporation v. Fitzgerald*, supra; *Martin v. Wing*, supra. The letter of credit was in the amount of $100,000; the initial cost of the letter was $2,000; and the interest was $21,997.38. Thus, the jury's decision that the Mudges were entitled to recover their incurred costs in the total amount of the verdict is justified, considering that but for the Bank's improper interference the Mudges would not have obtained the letter of credit or incurred the consequent cost of $123,997.38. The letter of credit was acquired to provide validity to the corporate stock repossession and proximately measured the sustained damage. There was no error in denying the directed verdict motion.

We answer the first two issues affirmatively, and there is no need to proceed to appellant's third issue because we find there was sufficient evidence to uphold the jury's verdict. *Clarke v. Vandermeer*, Wyo., 740 P.2d 921 (1987). The case was submitted to and decided by the jury on a theory of contractual interference for monetary benefit with a known nonencumbrance covenant between the prospective borrower and a third party. This case, in classical terms, fits the historical perspective of this tort theory.[1] The practical litigative issue was knowledge and conse-

---

1. For an extended reference to authorities and law journal writings on the subject, see *Texas West Oil and Gas Corporation v. Fitzgerald*, supra, 726 P.2d at 1066, n. 2, Urbigkit, J., dissenting.

quent disregard, which was adversely determined by jury verdict.

Affirmed.