880 F.2d 875
 TECHNOLOGY FOR ENERGY CORPORATION, Plaintiff-Appellant,
v.
SCANDPOWER, A/S; Scandpower, Inc., Defendants,
Radcal Engineering, Inc.; Fluid Components, Inc.; Robert
D. Smith; James P. Waring; Malcom M. McQueen;
and Robert A. Deane, Defendants-Appellees.
 No. 88-5761.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 5, 1989.
Decided July 26, 1989.
Rehearing Denied Aug. 31, 1989.
 
 James S. Tipton, Jr. (argued) Gentry, Tipton, Kizer & Little, Knoxville, Tenn., for Technology for Energy Corp., plaintiff-appellant.
 Robert D. Smith, Radcal Engineering, Inc., Plum Branch, S.C., pro se and for Scandpower, A/S, Scandpower, Inc., defendants, and Radcal Engineering, Inc. defendant-appellee.
 L. Anderson Galyon, III, Rebecca B. Murray, Knoxville, Tenn., Kirk Allen Miller, Rich, Sussman & Wischkaemper, and Michael Wischkaemper (argued), Carlsbad, Cal., for Fluid Components, Inc., defendant-appellee.
 James P. Waring, Knoxville, Tenn., pro se.
 Rebecca B. Murray, Knoxville, Tenn., and Kirk Allen Miller, Carlsbad, Cal., for Malcolm M. McQueen, defendant-appellee.
 Rebecca B. Murray, Knoxville, Tenn., for Robert A. Deane, defendant-appellee.
 Before KENNEDY, JONES and WELLFORD, Circuit Judges.
 KENNEDY, Circuit Judge.
 
 
 1
 Appellant Technology for Energy Corporation ("TEC") brought a tort action alleging intentional interference with prospective economic advantage against Scandpower, A/S and its American subsidiary Scandpower, Inc. (collectively "Scandpower"); Radcal Engineering, Inc. ("REI"); Fluid Components, Inc. ("FCI"); Robert D. Smith; James P. Waring; Malcom M. McQueen; and Robert A. Deane. TEC and Scandpower reached a settlement prior to trial. At the close of TEC's case against the remaining defendants, the district court granted defendants' motion to dismiss pursuant to Fed.R.Civ.P. 41, and TEC brought this appeal. We conclude that TEC failed to prove that it probably would have obtained the contract but for defendants' wrongful interference, as required by California law. Accordingly, the judgment of the District Court is affirmed.
 
 I.
 
 2
 In 1976, Scandpower developed and patented a technology known as RADCAL, which is used to monitor conditions inside nuclear reactors. Defendant Smith was a co-inventor of the technology. Lacking the resources for commercial development of the RADCAL technology, Scandpower wished to find a joint venture partner in the United States. In early 1983, Scandpower and TEC began protracted negotiations concerning a possible joint venture or exclusive license. No formal agreement was ever reached. However, the District Court found that "the parties did expressly agree to permit TEC to sell RADCAL technology on a 'case-by-case' basis." TEC entered into several contracts to supply RADCAL technology over the ensuing months.
 
 
 3
 In late 1983 and early 1984, TEC suffered a downturn in its business, prompting Smith and Waring to consider other possible joint-venture partners. Smith and other Scandpower officials began discussions with FCI in 1984, but negotiations with TEC continued.
 
 
 4
 The District Court found that "[s]ometime prior to February 1, 1985," TEC submitted a bid on the contract which is the subject of this dispute--a contract to supply RADCAL technology to the Sacramento Municipal Utility District ("SMUD"). Scandpower and TEC had reached "case-by-case" agreement permitting TEC to seek the SMUD contract.
 
 
 5
 At about the same time, "early 1985," Scandpower granted the exclusive rights to manufacture and market RADCAL technology in the United States to REI, a corporation formed by Smith and Waring. REI then granted a sublicense to FCI.
 
 
 6
 At its board meeting of March 7, 1985, SMUD apparently was about to accept TEC's bid when Smith and officials of FCI represented to SMUD that TEC was in dire financial straits and that TEC had no rights to RADCAL technology. The District Court found that the first representation was true, but the second was false, since Scandpower had given TEC "case-by-case" permission to pursue the SMUD contract.[1] SMUD asked TEC to produce a supply bond or letter of credit and documentation of its rights to RADCAL technology. TEC was unable to satisfy either request, and SMUD rejected its bid. Based on the statements of SMUD officials, the District Court determined that failure to comply with either request--standing alone--would have caused SMUD to reject TEC's bid.
 
 II.
 
 7
 On appeal TEC does not challenge the District Court's factual findings, but only its legal conclusion that TEC's damages were not proximately caused by defendants. Under California law,[2] proof of "damages to the plaintiff proximately caused by the acts of the defendant" is an essential element of the tort of interference with prospective economic advantage. Buckaloo v. Johnson, 14 Cal.3d 815, 827, 122 Cal.Rptr. 745, 752, 537 P.2d 865, 872 (1975). The District Court found that plaintiff had not proved the existence of this element, because TEC's injury resulted from an "intervening cause"--TEC's failure to provide the documentation and financial assurances required by SMUD--not from the defendants' actions. We conclude that this analysis misapplied the law of causation. An intervening cause "is one which operates without respect to defendant's alleged cause. It would have been operating ... if defendant's cause was wholly out of the picture." Werkman v. Howard Zink Corp., 97 Cal.App.2d 418, 218 P.2d 43, 48 (1950). TEC's failure to provide the requested documentation cannot be deemed an intervening cause, because SMUD's request for documentation was prompted by defendants' allegedly tortious acts.
 
 
 8
 While we disagree with the District Court's "intervening cause" analysis, we conclude that the decision below should be affirmed on other grounds. In order to make out a claim for intentional interference with prospective economic advantage, the plaintiff must meet a "threshold causation requirement" by adducing "proof that it is reasonably probable that the lost economic advantage would have been realized but for the defendant's interference." See Youst v. Longo, 43 Cal.3d 64, 71, 233 Cal.Rptr. 294, 298, 729 P.2d 728, 732 (1987) (emphasis in original). In addition:
 
 
 9
 It has been repeatedly held that a plaintiff, seeking to hold one liable for unjustifiably inducing another to breach a contract, must allege that the contract would otherwise have been performed, and that it was breached and abandoned by reason of the defendant's wrongful act and that such act was the moving cause thereof.
 
 
 10
 Dryden v. Tri-Valley Growers, 65 Cal.App.3d 990, 997, 135 Cal.Rptr. 720, 725 (1977) (emphasis added); see also Augustine v. Trucco, 124 Cal.App.2d 229, 246, 268 P.2d 780, 791 (1954). The logic behind this requirement is obvious: it prevents the plaintiff from obtaining a "windfall" in the form of damages for interference with an economic opportunity which it would not have obtained even if the defendant had done nothing wrong.
 
 
 11
 TEC cannot meet California's threshold causation requirement. The District Court found that defendants' statements concerning TEC's RADCAL rights were false, but that their warning about TEC's precarious financial situation was truthful. The court also found that FCI was privileged to compete with TEC for the SMUD project. SMUD had not yet awarded the contract; and since FCI was privileged to compete, it was not wrongful for FCI truthfully to inform SMUD about TEC's financial difficulties. See, e.g., Environmental Planning and Information Council v. Superior Court, 36 Cal.3d 188, 194, 203 Cal.Rptr. 127, 131, 680 P.2d 1086, 1090 (1984) ("competitor's stake in advancing his own economic interest" sufficient justification for interference where "contractual relations are merely contemplated or potential"). Acting on this information, SMUD requested a bond or letter of credit, but TEC was unable to procure either. The District Court found that this difficulty alone was sufficient to "doom" TEC's bid. Therefore, it was not "reasonably probable" that TEC would have obtained the SMUD contract but for wrongful interference by FCI. TEC still would have lost the contract due to its inability to allay SMUD's concerns about its financial plight--concerns which arose from privileged disclosures by FCI.
 
 
 12
 Appellant protests that under the District Court's findings of fact, the defendants' false allegation that TEC lacked rights to the RADCAL technology should be analyzed as a "concurrent cause" of TEC's injury. A concurrent cause constitutes the legal or "proximate" cause of an injury if it was a "substantial factor" in bringing about the injury--even if the injury would have occurred in the absence of the concurrent cause. See, e.g., Vecchione v. Carlin, 111 Cal.App.3d 351, 358-59, 168 Cal.Rptr. 571, 575-76 (1980). TEC contends that since either FCI's truthful representations or its false ones would have doomed the contract, they are concurrent causes. Therefore, TEC argues, it can recover if the false representations were a "substantial factor" in SMUD's decisionmaking process.
 
 
 13
 The flaw in TEC's argument is that it fails to recognize that the tort alleged here requires the plaintiff to prove that it would have obtained the economic advantage "but for" the defendants' tortious interference. Youst, 233 Cal.Rptr. at 298. In other words, a "but for" test is built into the tort's "threshold causation requirement."[3] As discussed above, TEC would not have obtained the SMUD contract "but for" FCI misrepresentations; the District Court found as a fact that the truthful, privileged disclosures about TEC's dire financial condition alone would have caused SMUD to reject TEC's bid.
 
 
 14
 Accordingly, the judgment of the District Court is AFFIRMED.
 
 
 
 [1]
 The District Court found that FCI was privileged to compete for the SMUD contract. Although the District Court made no explicit finding, it necessarily follows that the District Court found that TEC's case-by-case agreement with Scandpower did not grant TEC any exclusive rights to RADCAL
 
 
 [2]
 The District Court assumed without deciding that the law of California, rather than Tennessee, applies to TEC's cause of action. The District Court found that Tennessee law does not recognize the tort of interference with prospective economic relations. See Taylor v. Nashville Banner Pub. Co., 573 S.W.2d 476, 485 (Tenn.App.1978), cert. denied, 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 396 (1979). Since it concluded defendants would prevail under either state's law, the Court deemed it unnecessary to solve the choice of law puzzle. TEC does not contest the District Court's application of California law to its claims; indeed, it argues California law "is clearly applicable". Like the District Court, we find it unnecessary to reach the choice-of-law question
 
 
 [3]
 As the California Supreme Court said in Youst:
 Although varying language has been used to express this threshold requirement, the cases generally agree that it must be reasonably probable [that] the prospective economic advantage would have been realized but for defendant's interference.
 Id. (emphasis added).