**Daniel L. PRICE, Jr., d/b/a Mountain States Adjustment, Appellant (Plaintiff),**

v.

**Larry D. SORRELL and Hazel Hatcher, Appellees (Defendants).**

No. 89–12.

Supreme Court of Wyoming.

Dec. 28, 1989.

Patrick M. Hunter, Casper, for appellant.

Larry Sorrell, pro se.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

CARDINE, Chief Justice.

Appellant, Daniel L. Price, Jr., d/b/a Mountain States Adjustment (Price), a col-

**13.** *Davis,* 885 F.2d at 520.

lection agency, sued Attorney Larry D. Sorrell, appellee, to recover damages for intentional interference with performance of its contract with Riverton Memorial Hospital. This appeal is from summary judgment in favor of Sorrell.

We affirm.

The issues, as stated by appellant, are:

"I. Did the district court err in finding that a breach of contract was necessary for appellant to prevail in an action pursuant to Section 766A of the Restatement (Second) of Torts?

"II. Did the district court err in requiring that without breach of contract in an action pursuant to Section 766A, appellant must show the imposition of substantial expense or burden upon one of the parties to the contract?"

In response, Sorrell asserts that under governing Wyoming law a breach or termination of the contractual relationship is a necessary element of the tort of intentional interference with contract.

Appellant was engaged by Riverton Memorial Hospital (RMH) to collect delinquent accounts from debtors. Appellee Sorrell, an attorney at law, was employed by a debtor to represent her. Sorrell wrote a letter to RMH questioning the reputation of Price and his company, questioning RMH's wisdom in having engaged Price's services, denying that his client owed the debt, and inviting a lawsuit if that was RMH's wish. Price alleged these facts in his complaint and asserted that, pursuant to § 766A of the Restatement, Second, Torts (1979), he was entitled to collect damages from Sorrell. Price alleged that Sorrell's letter led to a threatened loss of his contractual relationship with RMH and that his actual damages to repair that relationship with RMH was $117. Price sought some $25,000 in damages for the injury to that contractual relationship and requested exemplary or punitive damages.

Sorrell filed a motion for summary judgment supported by admissions and answers to interrogatories which established that Price's contract with RMH had not been breached; that Price had expended, as a result of Sorrell's letter, approximately $117 to produce recorded telephone conversations of cases involving collections on behalf of RMH; and to make telephone, as well as personal, contact with RMH employees in an effort to answer the questions raised by RMH concerning Price's contract. The district court determined that:

"1. An action for tortious interference with a contract will not lie unless there has been an actual breach, failure to perform or termination of the contract allegedly interfered with;

"2. If an action for tortious interference with a contract does lie without an actual breach, termination or failure to perform an obligation under a contract, it only lies when the tortious interference is such that a substantial expense or burden is imposed upon one of the parties to the contract, and no such substantial expense or burden was imposed upon the Plaintiff in this case."

The only issue we find necessary to address is whether this court will adopt the Restatement, Second, Torts § 766A (1979). We do not perceive ourselves as whimsical nor do we believe that an orderly and predictable development of the common law of torts requires adopting the totality of the Restatement, Second, Torts (1979). We choose, under the circumstances presented by this case, for good and valid reasons hereafter stated, to decline to adopt § 766A even though we have previously embraced §§ 766 and 766B. Section 766A provides:

"§ 766A. Intentional Interference with Another's Performance of His Own Contract

"One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him."

This court has adopted the Restatement, Second, Torts § 766 (1979), defining the tort of intentional interference with a contract. *Wartensleben v. Willey*, 415 P.2d

613, 614 (Wyo.1966); *First Wyoming Bank, Casper v. Mudge*, 748 P.2d 713, 715 (Wyo.1988). In *Mudge*, we iterated that the elements of intentional interference with contract are: (1) the existence of the contract; (2) the defendant's knowledge; (3) intentional and improper interference inducing or causing a breach; and (4) resulting damages. In *Martin v. Wing*, 667 P.2d 1159, 1161–1163 (Wyo.1983), we also adopted the Restatement, Second, Torts § 766B (1979), which provides:

> "One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
>
> "(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
>
> "(b) preventing the other from acquiring or continuing the prospective relation."

Appellant has called our attention to the fact that the Federal District Court for the District of Wyoming has predicted that Wyoming would recognize a cause of action under the Restatement, Second, Torts § 766A (1979), since we have already embraced §§ 766 and 766B as noted above. *Colorado Interstate Gas v. Natural Gas Pipeline Co. of America*, 661 F.Supp. 1448, 1469 (D.Wyo.1987). While we were persuaded that §§ 766 and 766B offered legal theories that enhanced Wyoming jurisprudence, we are not so persuaded with regard to § 766A.

Section 766 requires improper interference with a contract that induced or *caused a third party not to perform*, or a breach of the contract, for which plaintiff may recover. Section 766B requires for recovery that a prospective contractual relation was lost because of the interference. Under § 766A, however, a plaintiff may recover by showing only that plaintiff's performance of the subject contract was made *more expensive or burdensome* by the interference.

The difference between §§ 766 and 766A is substantial and significant. Where

§ 766 requires non-performance which includes a breach of the contract for liability to attach, § 766A requires, not a breach or non-performance, but only that performance became more expensive and burdensome. We are convinced that such an element of proof is too speculative and subject to abuse to provide a meaningful basis for a cause of action. The breach or non-performance of a contract, or the loss of a prospective contractual relation, is a reasonably bright line that reduces the potential for abuse of the causes of action defined by §§ 766 and 766B. *See Champion Well Service, Inc. v. NL Industries*, 769 P.2d 382, 385 (Wyo.1989). It is our view that existing causes of action, including §§ 766 and 766B, as well as defamation, libel and slander, provide adequate protection against the claims sought to be addressed in this particular case.

The district court correctly held that an action for tortious interference with a contract requires "an actual breach, failure to perform or termination of the contract."

THOMAS, J., files a specially concurring opinion in which GOLDEN, J., joins.

URBIGKIT, J., files a specially concurring opinion.

THOMAS, Justice, specially concurring, with whom GOLDEN, Justice, joins.

While I agree with affirming the summary judgment entered by the trial court in this case, I am satisfied that my colleagues on the court do not incorporate in their views an apt analysis of the case in the light of the Restatement (Second) of Torts § 766A (1979). Instead, the court rejects § 766A as an appropriate rule of law for Wyoming despite the fact that this court already has embraced §§ 766 and 766B of the Restatement (Second) of Torts (1979). This renunciation seems whimsical and capricious. This is especially true if one recognizes that this is not a § 766A case at all, and that what the court has done is promulgate an advisory opinion contrary to a well established principle. *State Board of Equalization v. Jackson Hole Ski Corp.*,

745 P.2d 58 (Wyo.1987); *Brad Ragan Tire Co. v. Gearhart Industries,* 744 P.2d 1125 (Wyo.1987); *Graham v. Wyoming Peace Officer Standards and Training Com'n.,* 737 P.2d 1060 (Wyo.1987); *Reno Livestock Corp. v. Sun Oil Co. (Delaware),* 638 P.2d 147 (Wyo.1981); *Wallace v. Casper Adjustment Service,* 500 P.2d 72 (Wyo.1972). Cf., *Tobin v. Pursel,* 539 P.2d 361 (Wyo.1975); *Cranston v. Thomson,* 530 P.2d 726 (Wyo. 1975); *West v. Willey,* 453 P.2d 883 (Wyo. 1969).

On the other hand we are permitted, we even have said required, to affirm the judgment of the trial court on any proper ground appearing in the record. *Reeves v. Boatman,* 769 P.2d 917 (Wyo.1989); *Deroche v. R.L. Manning Co.,* 737 P.2d 332 (Wyo.1987); *Independent Producers Marketing Corp. v. Cobb,* 721 P.2d 1106 (Wyo. 1986); *Kane v. Kane,* 706 P.2d 676 (Wyo. 1985); *Willard Given & Associates, P.C. v. First Wyoming Bank–East Cheyenne,* 706 P.2d 247 (Wyo.1985); *Wheatland Cold Storage and Meat Processing, Inc. v. Wilkins,* 705 P.2d 316 (Wyo.1985); *Litzenberger v. Merge,* 698 P.2d 1152 (Wyo.1985). We should affirm in this case, not by concluding that § 766A of the Restatement (Second) of Torts is not the law in Wyoming, but by recognizing that it has no application to the undisputed facts before the trial court.

The interrelationship between the two pertinent provisions perhaps can be best appreciated by setting them forth in full. Section 766 states:

"§ 766. Intentional Interference with Performance of Contract by Third Person

"One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract."

Section 766A states:

"§ 766A. Intentional Interference with Another's Performance of His Own Contract

"One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him."

The substantial difference between these two sections is the identification of the party to the contract towards whom the acts that constitute the intentional and improper interference are directed.

"* * * The tort of interference with existing or prospective contractual relations includes interference with an existing contract either by causing a third party not to perform his contract with the plaintiff (as in § 766) or by preventing the plaintiff from performing his own contract or making that performance more expensive or burdensome (as in § 766A); it also includes interference with prospective contractual relationships (as in § 766B)." Restatement (Second) of Torts § 767, Comment a. (1979).

Certainly, this is not a case in which the court is confronted with the adoption of a new legal theory. Instead, the only concern is whether the court should flesh out in a consistent manner a legal theory that already has been adopted. I believe that we have an obligation to the trial bench and to the bar to develop the common law of torts in Wyoming in an orderly and predictable fashion. The trial bench and the bar would have had every reason to assume that, given the history of our adoption of §§ 766 and 766B, the court would adopt § 766A. See *Colorado Interstate Gas Co. v. Natural Gas Pipeline Co. of America,* 661 F.Supp. 1448 (D.Wyo.1987), aff'd in part, rev'd in part 885 F.2d 683 (10th Cir.1989).

In this case, we need not make any decision to espouse or not to espouse § 766A because the facts do not justify invoking it. The offending letter was written to Price's client, the hospital. Had there ensued a

termination of the contractual relationship, a claim could have been asserted under § 766 of the Restatement (Second) of Torts. That did not happen, however, and the letter could not possibly have made Price's performance of those duties he had assumed under the contract more expensive or burdensome. He was totally free to carry on the performance of his contractual obligations exactly as he had done before. While Price's effort to convert his case to one which might fit under § 766A is creative, it also is specious.

In eschewing the concept articulated in § 766A, the majority assumes that this is a separate and novel theory. That is not so. Instead, this section of the Restatement (Second) of Torts simply describes an alternative manner for committing the tort of wrongful interference with a contract, the legal theory that we adopted in *Wartensleben v. Willey*, 415 P.2d 613 (Wyo.1966), and have consistently applied in *First Wyoming Bank, Casper v. Mudge*, 748 P.2d 713 (Wyo.1988); *Texas West Oil and Gas Corp. v. Fitzgerald*, 726 P.2d 1056 (Wyo. 1986); *Toltec Watershed Imp. Dist. v. Johnston*, 717 P.2d 808 (Wyo.1986); *Dehnert v. Arrow Sprinklers, Inc.*, 705 P.2d 846 (Wyo.1985); *Martin v. Wing*, 667 P.2d 1159 (Wyo.1983); *Basin Elec. Power Co-op.—Missouri Basin Power Project v. Howton*, 603 P.2d 402 (Wyo.1979); and *Kvenild v. Taylor*, 594 P.2d 972 (Wyo. 1979). If, as we have said, we permit recovery for the tort of wrongful interference with a contract, or potential contract, when the wrongful acts are directed toward the other party to the contract, or potential contract, no logical reason can be advanced for refusing recovery when the wrongful acts are directed toward the party who thereby is prevented from performing his duties under the contract or whose performance is rendered more onerous by the wrongful acts of the tortfeasor. The wronged party well may experience problems of proof with respect to the factor of causation and the amount of damage, but those problems are no different from similar problems that arise in a myriad of circumstances.

No meaningful distinction can be rested on the requirement of a breach of the contract because that requirement obviously is not an element of proof when the tort of wrongful interference with a potential contract is addressed under Restatement (Second) of Torts § 766B. Furthermore, it is conceptually possible that the degree of interference against the party to the contract would so inhibit his performance as to result in a breach of the contract. Surely, one who had a contract to haul logs out of the forest, but was forced to travel an extra fifty miles each trip because a landowner wrongfully closed a road would not be denied a remedy simply because no breach of the contract to haul logs was caused. The right to recover for wrongful interference with the log hauler's contract should be recognized.

My view is that, if this court should eschew the adoption of § 766A of the Restatement (Second) of Torts in a proper case, then it would be consistent to overrule that line of cases in which we have adopted §§ 766 and 766B. The failure to do so would simply lend further uncertainty to the state of the law of torts in Wyoming.

I note a concern with the economic implications and the consequences to free enterprise that might flow from adopting § 766A of the Restatement (Second) of Torts. These objections relate to the right to compete in business. Usually it is a mistake to read the Restatements of the Law selectively without considering related sections. In § 768 of the Restatement (Second) of Torts, the economic concerns are addressed by the drafters, and I am satisfied with their treatment. It is apparent that the dire consequences here predicted have not prevented the appropriate application of these principles in other jurisdictions where they have been adopted in a consistent fashion. Certainly, the economic implications cannot be any more adverse than any other of the creative tort theories now in vogue in the common law of torts in America.

URBIGKIT, Justice, specially concurring.

I concur in the holding of the majority to affirm the decision of the trial court and also to reject the expansion of intentional interference as a class of tort from the demonstrable to the arguable. I write further to define the philosophy for care before expansion of this tort and to recognize the lessons which should be accordingly learned from the *Texas West* cases: *Texas West Oil and Gas Corp. v. Fitzgerald*, 726 P.2d 1056 (Wyo.1986) (*Texas West I*) and *Texas West Oil and Gas Corp. v. First Interstate Bank of Casper*, 743 P.2d 857 (Wyo.1987), *aff'd* 749 P.2d 278 (Wyo.1988) (*Texas West II*). In *Texas West I*, two members of this court found tortious conduct when a guarantor interfered with a contract between a borrower and equipment purchasers, two members of this court found no actionable tort, and the fifth member of this court found interference with a prospective contract "for intentional, interference with a contractual expectancy." *Texas West II*, 743 P.2d at 867 (Thomas, J. dissenting).

In *Texas West II*, a majority of this court found the lender when sued by the borrower had not committed any tortious offense in loan collection activities by recoursing the obligation to the guarantor. One dissenting member of this court again found an arguable tort, not only against the lender, but against a director of the contracting party for wrongful interference with an expectancy (to contract). The second dissenting member of this court had a procedural objection to the decision of the trial court achieved by order sustaining a motion to dismiss.

The first lesson from the *Texas West* cases is the membership of this court did not even agree as to the nature of the basic tort for which recovery should or should not be available. A multiplication of problems for both bench and bar should be expected if not even a breach or denial of contract is required for institution of this character of tort litigation.

A further lesson in commercial activities springs from the nature of competition which is indigenous to free enterprise. Competition inflicts burdens on competitors. The pursuit of conflicting economic interests is the essence of free enterprise. Extending protection from competition, under the guise of actionable tort, works to our economic disadvantage because such protection is antithetical to our economic requirements for vibrancy and expansion. Consequently, I find continued justification for a conservative perspective before expanding any theories of intentional interference torts. Much of what any active person does can be said to adversely affect someone else, whether rightfully or wrongfully. The legal issue presented here is direct and pervasive. Prior to *Texas West I*, Wyoming had adopted intentional interference with a performance of a contract which included the following elements:

"(1) the existence of a valid contractual relationship;

"(2) knowledge of the contractual relationship on the part of the interferor;

"(3) intentional and improper interference *inducing or otherwise causing a breach or termination* of the relationship; and

"(4) resultant damage to the party whose relationship has been disrupted."
* * * *Dehnert v. Arrow Sprinklers, Inc.,* supra, 705 P.2d [846] at 850 [ (Wyo.1985) ].

*Texas West I*, 726 P.2d at 1073 (Urbigkit, J., concurring in part and dissenting in part) (emphasis in original).[1]

By the concurrence in *Texas West I* as following *Martin v. Wing*, 667 P.2d 1159 (Wyo.1983), this court had also adopted the Restatement (Second) of Torts § 766B (1979) proviso of inducing and causing the

---

**1.** California and some other jurisdictions have included a clarifying fifth factor of proximate cause: " ' "(5) resulting in damage to the plaintiff. * * *." *Abrams & Fox, Inc. v. Briney* (1974), 39 Cal.App.3d 604, 608, 114 Cal.Rptr. 328, 331.' *International Wood Processors v.*

*Power Dry, Inc.,* 593 F.Supp. 710, 729 (D.S.C. 1984), *aff'd* 792 F.2d 416 (4th Cir.1986)." *Texas West I*, 726 P.2d at 1073. This "but for" threshold causative requirement was recently applied in *Technology For Energy Corp. v. Scandpower, A/S,* 880 F.2d 875 (6th Cir.1989).

non-entry into a contract or preventing achievement of the relationship as the interference with the expectancy claim. Elements of that cause of action are identical with Restatement (Second) of Torts, *supra*, § 766, the conventional interference tort, except the claim relates to denial of another contract and not causing the breach of an existing contract.

This present case advances appellant's request to expand the scope of liability to include damage recovery from increase in burden of performance of an existing contract—activity which does not cause a contract to be breached or result in a failure to enter into a contract. Any adverse activity can "cause an increased cost in performance." I could find that tort in almost every kind of head-to-head competition. There is a place in tort litigation for damage recovery when someone improperly causes a contract between two other actors to be broken or the performance denied. *Cf. Texaco, Inc. v. Pennzoil Co.*, 626 F.Supp. 250 (S.D.N.Y.), *aff'd and modified* 784 F.2d 1133 (2d Cir.1986), *rev'd* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); *Texaco, Inc. v. Pennzoil Co.*, 748 S.W.2d 631 (Tex.App.1988); *Texaco, Inc. v. Pennzoil Co.*, 729 S.W.2d 768 (Tex.App.1987), *cert. denied* 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988); and Note, *The Ultimate Expansion of the Younger Doctrine: Pennzoil Co. v. Texaco, Inc.*, 41 S.W.L.J. 1055 (1987). I see no justification in expanding tort liability to include an increase in the costs of performance since that liability can potentially reach the ends of free enterprise.

Collection agencies, as was appellant's Mountain States Adjustment, are subject to the slings and arrows of angered debtor response. In absence of the actions that cause a loss of business, the performance of collection agencies should be adequately adjusted to business responsibilities without implementation of tort litigation against debtors or their attorneys.[2]

The generic nature of the differences between Wyoming's previously adopted intentional interference theories and the addition urged by appellant is apparent in this appeal and constitutes the difference between the easily determinable and specific to be compared with the non-specific and conjectural. The tort subject of Restatement (Second) of Torts, *supra*, § 766 results from a breach of a third-party contract and Restatement (Second) of Torts, *supra*, § 766B from denial of achieving the contract; so that the case consequently starts with a broken contract or a denied contract. Conversely, Restatement (Second) of Torts, *supra*, § 766A addresses the intangible or conjectural increased burden for performance within a contract which is neither breached nor denied. As a predicate for litigation, it is "relatively" simple to initially demonstrate that a contract was breached or never made. Conversely, any claim of increased burden in performance directly attracts consideration of the functionality factors of economics and competition's competitive conflict. The abrasive edge of economic competition is not so neatly confined to propriety and impropriety. *See* Restatement (Second) of Torts, *supra*, § 767. Making someone liable for making another's contract "more expensive or burdensome" is too imprecise to presently justify the addition of Restatement (Second) of Torts, *supra*, § 766A into the litigation arsenal of economic activities.

Consequently, in accord with the lessons of the *Texas West* cases, I concur with the court's decision.

---

**2.** There is another section of the Restatement (Second) of Torts, *supra*, § 766C which clarifies the tort cannot be negligently induced since consisting only of intentional conduct.