Charles **BERTA**, Appellant
(Plaintiff below),

v.

Frances A. **FORD**, Appellee
(Defendant below).

No. 3812.

Supreme Court of Wyoming.

May 15, 1970.

Henry A. Burgess and Richard M. Davis, Jr., of Burgess, Kennedy & Davis, Sheridan, for appellant.

Lawrence A. Yonkee, of Redle, Yonkee & Redle, Sheridan, for appellee.

Before GRAY, C. J., and McINTYRE, PARKER and McEWAN, JJ.

Mr. Chief Justice GRAY delivered the opinion of the court.

As the result of an intersection accident involving a motorbike upon which plaintiff was riding and an automobile being driven by the defendant, plaintiff commenced an action to recover damages to his person and to the motorbike, alleging that defendant had negligently caused the collision between the two vehicles. Defendant, in her answer, admitted that the collision had occurred; denied that she was negligent; and affirmatively alleged that plaintiff was guilty of contributory negligence in that plaintiff failed to exercise ordinary care and such negligence caused or contributed to his injury and damage. The action was tried to a jury; a verdict returned finding generally for the defendant and against the plaintiff; and judgment entered thereon dismissing plaintiff's complaint. Plaintiff's appeal followed. In support of his claim of errors, plaintiff contends that there was no substantial evidence to sustain the implied finding of the jury that defendant was free from negligence or that plaintiff was guilty of contributory negligence and that the trial judge erred in refusing plaintiff's Instruction B and in giving Instruction 9.

The record discloses that the accident occurred on November 28, 1966, shortly after the hour of 5 p. m. at the intersection of Fifth Street and Adair Street in the city of Sheridan, Wyoming. That part of Fifth Street involved here was located on a rather "steep" hill; was surfaced with "loose gravel"; was approximately 27 feet wide on the traveled portion, with no curb or gutter; was, of course, unmarked as to lanes of travel; ran approximately east and west; and intersected with Adair Street, which ran approximately north and south.

The day was clear, the street dry, and the evidence and testimony relating to visibility at the time of the accident varied all the way from plaintiff's testimony that it was "twilight" but "you could see fine without any artificial light" to the testimony of defendant that she had her headlights turned on "because it was dark." The police officer who investigated the accident arrived there within a minute or two after 5:11 p. m. and said it was light when he arrived but "dusk" and "almost dark" but "you could see fairly good." The street light at the intersection was on at the time of the accident and according to an official publication of the U.S. Naval Observatory admitted in evidence the time of sunset for Sheridan, Wyoming, on that day was the hour of 4:30 p. m.

Plaintiff was proceeding west up the hill on Fifth Street on a small Honda motorbike in his own lane of traffic and testified that he was traveling at a speed of approximately "five or ten miles an hour, maybe fifteen, not any over that," but did not deny that he told the investigating officer he was traveling between "twenty and twenty-five miles per hour." With respect to whether the light on the motorbike was turned on he was asked, "Did you have lights on your vehicle?" and answered, "I did" and then stated that he had a regulation front headlight as well as a taillight. While there was some testimony concerning the condition of the light subsequent to the accident, the matter of whether or not the light was turned on was not clarified. Plaintiff also said he saw defendant's automobile proceeding down Fifth Street and that defendant's lights were on, although he could not fix the distance when he first observed defendant's automobile. When asked if he saw defendant "turn any signal indicator on" he answered, "There was no——," stopped his answer there, and the point was not further developed. With respect to the point of impact, plaintiff stated it was in his lane of traffic at the intersection, but that he had "blanked out before I struck the car, or she struck me," and then said, "I saw the car. I hit the brakes and tried to swerve out of her way as she was coming toward me. I don't remember striking the car." On cross, when asked if his testimony was not to the effect that he had seen the defendant's car approaching at some point and then next saw it immediately in front of him at the time of the impact, he answered, "I noticed it proceeding down the

street, and I don't take special care of every car I see." On redirect he was asked if he saw defendant "turn" and he said he did and reiterated that defendant was in his lane; he slammed on his brakes; and turned left trying "to get out of her path where she was going, and that's why I was hit on the right-hand side." On recross he was asked when he first realized defendant was turning or coming into his lane, and all he could remember was that the car was just a "few feet" in front of him, which was closer than ten feet. With respect to the matter of braking, the investigating officer testified that he saw no "tracks or marks" left on the highway by the motorbike.

According to defendant's testimony, she had entered Fifth Street off Bellevue Street, which intersected with Fifth Street one block west of Adair Street, and upon entering Fifth Street came to a stop, turned right, and drove east on Fifth Street to the intersection of Fifth Street and Adair. Defendant estimated her speed at between five and ten miles per hour, and as she approached the intersection she slowed down and "turned on my blinker lights" to indicate a left turn. At the scene defendant told the officer that at the time of impact she was "almost stopped" and estimated her speed between one to five miles per hour. Defendant testified that before starting the left-hand turn she looked down Fifth Street, saw "Nothing," but about the time she started to make the turn "my car was hit by a motorbike," which turned out to be plaintiff's motorbike. Defendant also said she was looking up Adair Street at the time of impact, first saw plaintiff when "He was against my car," and came to a stop almost immediately upon impact. The motorbike came in conact with defendant's car on the right front fender just over the tire.

The officer testified that when he arrived at the scene the vehicles had not been moved subsequent to the accident. Although certain measurements were taken by him from a stop sign on the northeast corner of the intersection and a fire hydrant on the northwest corner of the intersection to the point where defendant's vehicle came to rest, no effort was made to relate, and no doubt it was not possible to relate, the measurements to a point on the street where the vehicles actually collided. The officer, however, did testify that the front end of defendant's vehicle "was just to the left of the center line. The back of the car was on the center line, or on the right side of it." The motorbike was lying five or six feet in front of defendant's car. On cross the officer said that there was between a foot and a foot and a half of skidmarks "behind the front wheels" of defendant's car. Just where these skidmarks started with respect to what the officer assumed was the center line of the street is not clear, and neither is the evidence relating to the distance the "front end" of defendant's car after impact was to the left of the assumed center line fixed with any degree of accuracy.

The statutory duties imposed upon drivers with respect to a left-hand turn at an intersection are contained in §§ 31–112(b) and 31–119, W.S.1957, C.1967, and provide as follows:

"At any intersection where traffic is permitted to move in both directions on each roadway entering the intersection, an approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and by passing to the right of such center line where it enters the intersection and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered. Wherever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection." (§ 31–112 (b))

"The driver of a vehicle within an intersection intending to turn to the left shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard, but said driver, having so yielded and having given a signal when and as required by this act, may make

such left turn and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right-of-way to the vehicle making the left turn." (§ 31–119)

As a basis for the contention that the implied finding of the jury exonerating defendant from negligence in the operation of her vehicle was not supported by substantial evidence, plaintiff argues that undisputed and uncontroverted evidence establishes such negligence in that the collision occurred in plaintiff's lane of travel; that both vehicles were within posted speed limits; that it was twilight and visibility was clear; and that defendant by her own admission looked but did not see plaintiff's motorbike approaching the intersection, which she could or should have seen, and notwithstanding proceeded to turn left immediately in front of plaintiff. That, of course, represents plaintiff's interpretation of the facts.

■ Even assuming, however, that there is little dispute in the facts, we are nevertheless duty bound to give to the evidence favorable to the prevailing party every reasonable inference that can be drawn from it in support of the jury's verdict. Roden v. Davis, Wyo., 460 P.2d 209, 212. In view of the general verdict we must also "assume every finding was made which was necessary to sustain the verdict or judgment rendered provided only there was substantial evidence which would justify such finding." Colwell v. Anderson, Wyo., 438 P.2d 448, 452.

■ In the first instance, as can readily be observed from our analysis of the facts, the inferences drawn by plaintiff were not the only inferences that reasonably could be drawn from the evidence presented. When that is true, it is for the jury to interpret and determine the facts, and if supported by substantial evidence the findings of the jury are conclusive. McDowall v. Walters, Wyo., 360 P.2d 165, 168, rehearing denied 361 P.2d 528. We have also said whether or not under § 31–119 a driver of a vehicle "is justified in turning to the left at a particular time depends on

the circumstances." Frazier v. Pokorny, Wyo., 349 P.2d 324, 330.

■ In our view the circumstances here presented a clear case for the jury to decide. It was confronted, as we are confronted in considering plaintiff's claims of error, with an accident occurring at an obscurely defined, unmarked, loosely gravelled intersection; with inconsistencies, to say the least in the testimony as to visibility at the time of the accident, which had a direct bearing on the question of "lookout"; with several "loose ends," as pointed out above, in the testimony relating to critical and material facts in the development of the totality of the circumstances; and with the almost total lack of physical evidence as to the position of the vehicles in the intersection when the collision occurred. Without belaboring the matter further, we hold that there was sufficient substantial evidence from which the jury could conclude, as it evidently did conclude, that defendant had complied with her statutory duties in the operation of her vehicle, had not violated her duty to keep a lookout, and was justified in commencing her left-hand turn under the circumstances. In this connection we would also point out that the trial judge denied plaintiff's motion for a new trial based upon the same contentions advanced here.

■ Plaintiff's contention that the trial judge erred in refusing his tendered Instruction B and thus prevented plaintiff from presenting his theory of the case to the jury requires little comment. In substance the instruction partially embodied the statutory duty of a driver making a left turn at an intersection and then went on to say that such a driver must keep a proper lookout and "is presumed by law to see that which he could see by looking, and he will not be permitted to say that he did not see what he must have seen had he looked." In its stead, with respect to statutory duties the trial judge by Instruction 8 submitted verbatim the provisions of §§ 31–112(b) and 31–119, both of which were applicable to the circumstances presented. In lieu of plaintiff's request con-

cerning proper lookout, including the portion quoted, the trial judge gave Instruction 9 reading as follows:

"The law provides that any person driving on a highway shall keep a proper lookout for other persons using the highway. By a 'proper lookout' is meant that lookout which would be maintained by an ordinarily reasonable and prudent person in light of all present conditions and those reasonably to be anticipated.

" 'Proper lookout' includes a duty to see objects in plain sight and a driver is bound to see reasonably that which is open and apparent and he must take knowledge of obvious dangers. This duty is not merely one of looking, but of observing which imposes upon an operator the necessity of being observant as to the traffic and general situation."

Although plaintiff excepted to the instruction and his counsel now says it was "a vague, general statement of the law concerning the duty of automobile drivers to keep a proper lookout," no authority is cited to sustain that view and on the contrary we think the instruction fully and fairly stated plaintiff's theory, Gillaspie v. Duncan, Wyo., 410 P.2d 577, 578, as well as defendant's theory with respect to the law applicable to maintaining a proper lookout. To have given plaintiff's tendered instruction would clearly be subject to the criticism we made in Stringer v. Board of County Commissioners of Big Horn County, Wyo., 347 P.2d 197, 201, that "The result tends to be the promulgation of an uncoordinated series of statements which often lose sight of the true governing factors in the litigation." In addition, of course, a party is not prejudiced by the refusal of an instruction when the matter is covered by the instructions given. Zanetti Bus Lines, Inc., v. Logan, Wyo., 400 P.2d 482, 487.

The difficulty with plaintiff's contention is the failure to recognize that the jury was not bound to accept his theory with respect to proper lookout based upon the assumption that the small motorbike, even though unlighted, was clearly visible to the defendant at all times. Aside from the well-known fact that the time involved here is one of the most difficult times to perceive objects upon the highway, as recognized by the legislature in § 31–172, W.S.1957, C.1967, in requiring that vehicles traveling upon the highway display "lighted lamps" within one-half hour after sunset, which is applicable here, there was testimony that it was "almost dark" or "dark," as the defendant put it, prompting her to turn on the headlights of her vehicle. Thus the jury would have been justified in believing that although defendant had looked prior to the time of commencing her left turn, the plaintiff's motorbike was not so clearly visible as to constitute an immediate hazard to the completion of the turn, thus placing on plaintiff the duty to yield the right-of-way.

Affirmed.