Erick O. ERICKSON and Connie Erickson, Appellants (Plaintiffs),

v.

Richard MAGILL and Key Real Estate Company, a Wyoming Limited Liability Company, Appellees (Defendants),

Scott D. McLennan and Marleen J. McLennan, husband and wife, (Defendants).

No. 85-121.

Supreme Court of Wyoming.

Feb. 7, 1986.

Rehearing Denied March 12, 1986.

Don W. Riske, Cheyenne, for appellants.

Kay Snider Coffman and Bert T. Ahlstrom, Jr., Cheyenne, for appellees.

Before THOMAS, C.J., and ROONEY * BROWN and CARDINE, JJ., and RAPER, J., Retired.

RAPER, Justice, Retired.

A jury returned a verdict finding that defendant Magill (appellee) intentionally interfered with a contract between the plaintiffs Ericksons (appellants) and buyers of real estate (McLennans); that appellee Magill breached a real estate agent's duty to appellants; and that appellants should recover damages in the sum of $25,000 and a

* Retired November 30, 1985.

statutory penalty in the sum of $7,125, for violation of statutory duties, against appellee Magill and appellee Key Real Estate Company (Key), the owner of Key being the real estate broker for whom appellee Magill was a real estate salesman. A judgment was entered for the total of those amounts less a $5,000 settlement derived by appellants from the McLennans, defendants dismissed from the suit before trial. The trial judge thereafter granted appellees judgment notwithstanding the verdict (JNOV).

On appeal from the JNOV, appellants set out the issues as:

"1. WHETHER THE COURT ERRED IN GRANTING APPELLEES' MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT.

"A. WHETHER THE RECORD CONTAINS EVIDENCE BY WHICH THE JURY COULD INFER THAT THE APPELLEES INTENTIONALLY INTERFERED WITH THE APPELLANTS' CONTRACT AND THAT SUCH INTERFERENCE CAUSED DAMAGE TO THE APPELLANTS.

"B. WHETHER THE RECORD CONTAINS EVIDENCE BY WHICH THE JURY COULD INFER THAT THE APPELLEES BREACHED THEIR FIDUCIARY DUTIES OWED TO THE APPELLANTS AND THAT SUCH BREACHES CAUSED DAMAGE TO THE APPELLANTS.

"C. WHETHER THE RECORD CONTAINS EVIDENCE BY WHICH THE JURY COULD INFER THAT THE APPELLEES VIOLATED W.S. 33–28–111(a)(xviii) AND THAT SUCH VIOLATION CAUSED DAMAGED [sic] TO THE APPELLANTS."[1]

Appellees state the issues to be:

"1. WHETHER THE TRIAL COURT WAS CORRECT IN GRANTING A JUDGMENT NOT WITHSTANDING THE VERDICT.

"A. WHETHER THE TRIAL COURT WAS CORRECT IN HOLDING THAT APPELLANTS FAILED

1. W.S. 33–28–111(a)(xviii):

TO CARRY THEIR BURDEN OF PROOF AT TRIAL, GENERALLY, AND, SPECIFICALLY, AS TO DAMAGES.

"B. WHETHER THE TRIAL COURT WAS CORRECT IN FINDING THAT THE APPELLEE REALTORS BREACHED NO DUTY OWED TO APPELLANTS, AND VIOLATED NO LEGAL OR ETHICAL OBLIGATION WHICH RESULTED IN DAMAGE TO THE APPELLANTS."

We will affirm.

The McLennans, after a search for a rural-type property, decided that the five acres with residence owned by appellants suited their needs and financial resources. They had just moved to the Cheyenne area and required occupancy a few days after their signed "Offer, Acceptance & Receipt" had been accepted by appellants, since the movers had arrived with their furniture and household goods. Appellants required an additional $10,350 earnest money and rent payment which was deposited in the form of a check, and a preoccupancy lease agreement was executed.

The McLennans immediately moved their furniture in, with much of the smaller household goods being left boxed. After one night of occupancy, December 4-5, 1983, they first stopped payment of the check and then notified appellees that they were extremely unhappy with the house and wanted a contractor to take a look at it. It was explained that even though the electric heat had been turned up, the wind was blowing through a tongue and groove ceiling. The kitchen and living room area could not be kept comfortable, so in order to keep warm they had to go to bed.

There were discussions most of the day of December 5th with appellants and appellees over what could be done about the problem. That evening the McLennans gave appellee Magill a note advising that they would not close the contract until such time as there was an agreement to withhold money from the purchase price to cover the cost of any repairs.

The next morning, December 6th, the McLennans instructed appellee Magill to cancel the note with respect to repairs; they no longer wanted the house under any terms. Another note was prepared by the McLennans and delivered to appellees in which they advised of the inability of the electric heating units to keep the house at a habitable temperature due to the wind blowing through leaks, creating a draft which the heating could not overcome. The McLennans considered this a major defect not disclosed by appellants, and they considered the contract void.[2] It was made clear that they intended to move out of the house as soon as they could find other accommodations.

In that the McLennans settled their differences by payment of $5,000 to appellants, the foregoing summary is prefatory

"(a) The commission shall upon a written sworn complaint or may upon its own motion investigate the actions of any broker, associate broker or salesman and may censure the licensee, suspend or revoke any license issued under this act [§§ 33-28-101 through 33-28-206] for any of the following:

\* \* \* \* \* \*

"(xviii) Acting for more than one (1) party in a transaction without the knowledge of all parties for whom the licensee acts; \* \* \*"

W.S. 33-28-114(b):

"If any person receives any money or the equivalent thereof as a fee, commission, compensation or profit by or in consequence of a violation of any provision of this act [§§ 33-28-101 through 33-28-206], he shall, in addition, be liable to a penalty of not less than the amount of the sum of money so received and not more than three (3) times the sum so received as may be determined by the court, which penalty may be recovered in a court of competent jurisdiction by any person aggrieved."

2. The full text of the note was:

"This property has a major defect which was known by the owners at the time of offer and which was not listed in the referenced agreement. The owner acknowledged that this problem has been longstanding and they have tried unsuccessfully to correct it. Normal nightly winds penetrate the doors, walls, windows and ceilings to such an extent that there is a major draft through the house and the electric heating units cannot maintain a habitable temperature. This defect was known to the owners at the time of the offer; is not readily visible upon inspection; and its disclosure to the offeror would have terminated all

to additional facts pertaining to the remaining claim against appellees.

Appellee Magill handled the sale of the property on behalf of the owners. When the McLennans announced they were refusing to close, Magill and the Key broker discussed the matter at some length with the McLennans, warning them that refusal to proceed constituted a breach of contract and that they could be required to specifically perform the agreement. The McLennans were taken to an attorney where they were informed that they would be sued. Regardless of those warnings, the McLennans were adamant that they were not going to stay in the house any longer than they had to.

Appellees had other listings. Appellee Magill showed the McLennans a property which interested them. The owners accepted an offer prepared and presented to them by appellee Magill. The form of offer contained a provision making the sale "contingent upon final resolution of a dispute involving the purchasers; relative to the property" of appellants.

Appellees were accused of interference with the contract of appellants with the McLennans. The response of appellee Magill in his testimony was that any hope of closing the sale of appellants' property to the McLennans was out of the picture, so there was no question of interference nor any reason to forego selling another property to them. The testimony of Mr. McLennan was that if Key felt it could not find another property and arrange the sale for them, "there were other real estate agents in this town" and "I was not going to close and they [Magill and Key] didn't get a vote in the matter."

Mr. Howell, broker-owner of Key, testified that while he was convinced the contract of the McLennans with appellants was such that the former could be forced to purchase, he had no control over the McLennans and

> "[t]hey could care less. · Regardless of what their legal potential on that proper-

> negotiation at that point. The owners['] misrepresentation of the facts makes the refer-

ty, * * * they told me the chandeliers moved in the wind and that they had blankets under the doors and they were freezing to death out there, and there was nothing I could do to change their minds,"

and "you can lead a horse to water but you can't make [him] drink."

### I

The trial judge in granting the motion JNOV summed it up in his bench decision:

> "Laying aside all of the defendants' evidence, and taking only that evidence most favorable to plaintiffs, I don't find any evidence that the actions of the defendant, or any of them, caused plaintiffs' damage, even if we assume the action may have been a technical violation of statute, or have been a technical interference with a contract, neither of which I admit except for the purpose of this argument right now—but I [sic] seems to me, I cannot bring myself to find that this was any cause of plaintiffs' damage, other than Mr. McLennan by himself. And when you heard him on the witness stand and listened to him and watched him, there was no doubt in any mind, here was a man who made up his mind; nobody influenced Mr. McLennan; he was a man who had his own views; he expressed them with a great deal of conviction and fervor; and he, himself, testified that there was nothing that the defendant Magill could have said to him that would have gotten him to close on that house.

> "So I'm left in the case with the inescapable conclusion that, as a matter of law, that you cannot arrive at a verdict that damage, if any, of plaintiff was caused by the action of either of these defendants, Mr. Magill or his employer, Key [R]ealty. So you may prepare an order."

We agree with the district judge.

Pursuant to Rule 50, W.R.C.P., appropriate motions to dismiss were made by appel-

> enced contract void."

lees at the end of appellants' evidence and at the close of all the evidence. The trial judge followed the approved practice of denying both and, in doing so, still had available the motion JNOV giving him a final opportunity to determine the legal question of sufficiency of the evidence raised by the motion after the jury had reached a verdict. As pointed out in *Cody v. Atkins,* Wyo., 658 P.2d 59 (1983), this procedure can promote judicial economy in cases where a JNOV is reversed; the original verdict can be reinstated, whereas when a directed verdict is granted at the close of a plaintiff's case, generally a new trial is required upon reversal.

When the evidence is wholly insufficient to support a verdict, it is the duty of the trial court to direct a verdict or enter a JNOV. *Cody v. Atkins,* supra. In determining whether a motion for a directed verdict or JNOV was proper, we apply the same test on appeal as does the trial judge in considering the motions originally in that there are only questions of law. *Carey v. Jackson,* Wyo., 603 P.2d 868 (1979). The test to be applied is whether the evidence is such that without weighing the credibility of the witnesses, or otherwise considering the weight of the evidence, there can be but one conclusion reasonable persons could have reached, and such motions should be cautiously and sparingly granted. *Carey v. Jackson,* supra.

Applying those standards, we arrive at the same conclusion as the trial judge. The evidence as disclosed by the transcript is devoid of a showing that appellee Magill caused appellants' damage by interfering with their contract with the McLennans. The McLennans were the sole cause by their irreversible stand that they would not live in appellants' house under any circumstances.

In actions for damages arising out of interference with a contract, this Court has, in *Board of Trustees of Weston County School District No. 1, Weston County v. Holso,* Wyo., 584 P.2d 1009, 1016–1017 (1978), set up the elements of proof necessary to establish the claim:

"(1) the existence of a valid contractual relationship or business expectancy;

"(2) knowledge of the relationship or expectancy on the part of the interferor;

"(3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and

"(4) resultant damage to the party whose relationship or expectancy has been disrupted."

See also authorities set out in *Board of Trustees of Weston County School District No. 1, Weston County v. Holso,* supra. Missing is the proof of element number three. The transcript is barren of any evidence that appellee Magill induced or caused the breach of contract by the McLennans or intended to do so. We cannot create liability in the appellees by their merely arranging the sale of another property to the McLennans. There must be more. Since the failure of proof of any single element required causes the claim to fall, we need go no further in the consideration of contractual interference.

## II

The evidence does not disclose that appellees ever breached their fiduciary duties to appellants. They did everything possible within reason to persuade the McLennans to close. As stated by appellants' expert in the following colloquy:

"Q Can you physically force someone to close on property?

"A It's very difficult to.

"Q In fact, Mr. Magill could not have physically forced these people to close on this property, could he?

"A No.

 \* \* \* \* \* \*

"Q \* \* \* There was nothing more that Mr. Magill could have done to force these people to close on the property, was there?

"A Probably not."

Appellants insist that appellees should not have arranged the purchase of another property for the McLennans. We see no reason or authority for going to such extreme under the circumstances of this case.

The McLennans terminated the contract before that transaction took place.

We continue to subscribe to the high standards established in *Hagar v. Mobley*, Wyo., 638 P.2d 127 (1981), for real estate salespersons in Wyoming, but we find no variance by appellees in this case from the principles of honesty, trustworthiness and competency.

### III

■ With reference to W.S. 33–28–111(a)(xviii) and 33–28–114(b), supra note 1, making it censurable for a real estate broker or salesperson to act "for more than one (1) party in a transaction without the knowledge of all parties for whom the licensee acts," and providing for recovery of a penalty, we need only observe that appellees never represented the McLennans adverse to the interest of appellants. In such case, there being no violation, no penalty is recoverable.

Affirmed.