**Kenneth R. AMES, Appellant (Plaintiff),**

**v.**

**SUNDANCE STATE BANK, Appellee (Defendant).**

**No. 92–134.**

Supreme Court of Wyoming.

April 8, 1993.

Rehearing Denied May 12, 1993.

Joseph E. Darrah, Powell, and Stephen R. Winship, Casper, for appellant.

Robert Berger and Dan R. Riggs, Sheridan, for appellee.

Before THOMAS, CARDINE, GOLDEN and TAYLOR, JJ; and ROONEY, Ret.J.

ROONEY, Justice (Retired).

This appeal by plaintiff below is from a Judgment Notwithstanding the Jury's Verdict in a matter in which defendant/appellee bank refused to renew appellant's note in 1989 as had been done during several previous years. The annual loans were made to provide operating money to appellant for his ranching business. Appellant's ranching business evolved from a yearling operation into a bred heifer operation and a breeding cattle operation. Each year, appellant would discuss with the bank's officer his budget, expected costs, status of long term debts with required annual payments, e.g., Wyoming Farm Loan debt, previous bank loan carry over, and similar items pertaining to appellant's financial situation. For years, a new note would then be executed, payable in one year. In 1989, appellee refused the renewal, and the existing note was called for payment.

The complaint alleged five claims for relief: breach of loan commitment, promissory estoppel, bad faith, tortious interference with contract and business relationships, and severe emotional distress. The last claim was withdrawn prior to trial. Appellee was granted its motion for summary judgment on the bad faith and tortious interference claims prior to trial (the court finding that there were no issues of material fact relative thereto and appellee to be entitled to judgment as a matter of law). Subsequently, appellant moved to amend his complaint to again assert these two claims, but the record does not reflect any action taken thereon. The case went to trial on the other two claims, i.e., breach of loan commitment and promissory estoppel.

In its verdict, the jury found that the bank breached its loan agreement of December 5, 1988 with appellant by failing to renew the note, and that it is liable to appellant by reason of promissory estoppel, fixing damages at $375,000.

Appellant words the issues on appeal:

"I. Whether the jury's verdict was overwhelmingly against the weight of the evidence.

"II. Whether the District Court erred in considering ordering a new trial on damages.

"III. Whether the District Court erred in granting the summary judgment and not allowing amendment of the complaint concerning Appellant's claims for intentional interference with contract and business relationships and bad faith."

Appellee words them:

"A. Whether the District Court erred in granting judgment notwithstanding the verdict.

"B. Whether the District Court erred in conditionally granting a new trial.

"C. Whether the District Court erred in granting summary judgment on claims where no material issue of fact existed or in not allowing the decided claims to be raised a second time by an amendment of the complaint shortly before trial."

## JUDGMENT NOTWITHSTANDING THE VERDICT

### (First issue of each party)[1]

As appellant recited, we recently repeated the standards for review of a

---

1. By use of the word "overwhelmingly" in his

first issue, appellant misstates the requirement

judgment notwithstanding the verdict in *Wilson v. McMahon*, 831 P.2d 1152, 1154 (Wyo.1992) (quoting *Inter-Mountain Threading v. Baker Hughes*, 812 P.2d 555, 558–59 (Wyo.1991)):

> " 'When this appellate court is faced with a JNOV question, we undertake a full review of the record without deference to the views of the trial court. *Cody v. Atkins*, 658 P.2d 59, 61–62 (Wyo. 1983). In determining whether a JNOV motion should be granted, we consider "whether the evidence is such that without weighing the credibility of the witnesses, or otherwise considering the weight of the evidence there can be but one conclusion reasonable persons could have reached * * *." *Erickson v. Magill*, 713 P.2d 1182, 1186 (Wyo.1986). In our review we consider the evidence favorable to the nonmoving party, giving it all reasonable inferences. *Carey v. Jackson*, 603 P.2d 868, 877 (Wyo.1979). A court should cautiously and sparingly grant JNOV motions. *Erickson*, 713 P.2d at 1186.' "

■ Appellant argues that "one of the principal issues determined by the jury was the intent of the parties." However, the intent of the parties cannot prevail for enforcement of all contracts. An agreement that by its terms is not to be performed within one (1) year from the making thereof is void unless the agreement is in writing and signed by the party to be charged with it. Wyo.Stat. § 1–23–105(a) (1988) (the statute of frauds). In his argument, appellant states that:

> "It is the position of Appellant that the loan commitment or contract was at least an oral agreement upon which the specific terms and parameters are represented by *all* of the documents generated by the parties, and primarily the bank's records, including the important supplementation of those documents by the primarily unrefuted evidence of the course of dealing and practice standards which the Appellee bankers admitted to be bound."

for reversal of a judgment notwithstanding the verdict. Excluding such word, the thrust of

Such did not include any written obligation binding the appellee to finance appellant's business for more than one year in the future. Appellant himself so testified. The written agreements between the parties relating to the terms of the loans consisted only of promissory notes given to appellee by appellant. They were clear and unambiguous. Extrinsic evidence cannot be used to vary their terms or determine an intent of the parties not expressed therein (the parole evidence rule). *Kerper v. Kerper*, 780 P.2d 923 (Wyo.1989); *Lawrence v. Farm Credit System Capital Corp.*, 761 P.2d 640 (Wyo.1988).

The district court properly granted judgment notwithstanding the verdict and the jury verdict was against the weight of properly admissible evidence. If the verdict had been allowed to stand and appeal was taken for error properly reserved on the basis of admission of evidence in violation of the parole evidence rule and of the statute of frauds, we would have to reverse and remand on appeal. The district court corrected the situation as it should. In its opinion letter, it said in part:

> "When Mr. Ames signed the notes and security agreements he may have had an expectation or, more likely, a hope that the bank would continue to finance his ranching operation indefinitely into the future. In spite of his private expectations, that was not the understanding of the bank officers; there was no meeting of the minds on that issue. Such a provision is conspicuously absent from the contract documents. It was error to entertain testimony contrary to the parties written agreement—I should not have admitted evidence which sought to vary the terms of the notes and affiliated security agreements. Construction of the contract is for the court, not the jury and only one construction is possible given the plain language of the contract documents. The[re] was no agreement to lend money beyond the term of the notes and by the clear language of the notes advances were subject to bank approval. There was no breach of the lending com-

appellant's first issue is as stated in appellee's first issue.

mitment nor was there a premature liquidation. Regardless of whether a demand to sell the herd was made (a matter hotly disputed by the bank) the fact is that no action was taken by the bank to force payment before the notes were due on December 5, 1989. In fact only partial payment was made on December 4, 1989 and the balance not paid (with the forbearance of the bank) for a considerable time after the due date. Moreover, any agreement to fund Ames' ranching operation for more than one year, as contended by Ames, would necessarily be unenforceable as violative of the Statute of Frauds. Accordingly, defendant is entitled to a judgment N.O.V. on the contract issue."

■ Yet to be considered with reference to this issue is appellant's contention that the doctrine of promissory estoppel favors his position. Again, the district court adequately and properly addressed this contention. It said in its opinion letter:

"The Statute of Frauds problem is avoided under the plaintiff's theory of promissory estoppel. *Reimilong [Remilong] v. Crolla*, 576 P.2d 461 (Wyo.1989 [1978]). In *B & W Glass, Inc. v. Weather Shield Mfg., Inc.*, [829] P.2d [809], (Wyo.1992), Case No. 91–123, decided April 10, 1992, the Wyoming Supreme Court extended the principle to the Uniform Commercial Code Statute of Frauds provision. In doing so it restated the doctrine [at page 5]:

" 'Promissory estoppel is a doctrine incorporated in the law of contracts. Restatement (Second) Contracts § 90 (1981). Judge Posner has provided a considered and succinct description of the doctrine: "If an *unambiguous* promise is made in *circumstances calculated to induce reliance,* and it does so, the promisee if hurt as a result can recover damages." *Goldstick v. ICM Realty,* 788 F.2d 456, 462 (7th Cir. 1986). Promissory estoppel is recognized as both a sword and a shield—a cause of action and a defense. Equitable estoppel is a close relative, but it is a tort doctrine that requires proof of

misrepresentation. *Goldstick.* [emphasis supplied]'

"The underscored language, quoted with approval by our Supreme Court, qualifies and clarifies in important detail the more general language of the Restatements and is of significance in this case. *See also, Hayes & Griffith, Inc., v. GE Capital Corporation,* —— F.Supp. ——, 1989 WL 135246 (N.D.Ill.), Memorandum Opinion & Order, Oct. 24, 1989.

"In this case there is no evidence of an *unambiguous* promise. The years old statements attributed to a deceased bank officer that he would "stick with" Ames are too vague to form a basis upon which promissory estoppel could rest. Likewise (considered in a light most favorable to Ames), even if the loan officer made statements that the bank would "fund his operation" for the 1989 year such a statement does not meet the requirement of an unambiguous promise. In dealing with a similar situation the court in *Hayes & Griffith* said: 'The statement is woefully vague. It was made in the context of ongoing negotiations, and it specified none of the essential terms of the transaction. It was thus not an unambiguous promise, as is necessary to stat[e] a claim for promissory estoppel.' Arguable a promise to 'fund his operation' could bind the bank to continue to lend money to Ames indefinitely and regardless of the profitability of his ranch and regardless of the security he would be able to supply and regardless of his ability to repay the loan. It is not unambiguous, nor is it even reasonable. When contrasted with the clarity and precision of the written notes and affiliated documents which emerged as a result of the parties negotiations, it is clearly evident that the alleged statement is simply unenforceable and could not reasonably be relied upon by Ames in the manner he has asserted here."

From a common sense standpoint, banks would be reluctant to renew notes even once, (1) if the renewal *itself* legally obligated them to make further renewals, or (2) if examination of the borrower's finances, budgets, etc., *itself* so obligated

them, or (3) if a combination of both of these actions so obligated them.

## CONSIDERATION OF THE DAMAGE AWARD

### (Second issue of each party)

In its opinion letter, the district court said in part:

"Finally, even though it is not necessary to the decision, I feel I must tell counsel that I would feel compelled to grant a new trial on the issue of damages in any event. The damages would have to be limited to one year at the most and could not reasonably have been in the amount awarded by the jury. Perhaps the award could be justified if this were a tort case (which would have required a showing of an intentional misrepresentation of fact—a matter clearly not appearing), but not upon a contract theory."

Inasmuch as this issue is not necessary to the decision of the district court or to our action on that decision, we need not address the issue.

## INTENTIONAL INTERFERENCE AND BAD FAITH CLAIMS

### (Third issue of each party)

As noted *supra*, appellee's motion for summary judgment was granted as to appellant's claims of bad faith and tortious interference. Subsequently, appellant filed a motion to amend the complaint to reallege the two claims, and a hearing was held thereon. As appellee states, "the lower court never entered a formal order denying the motion to amend, but allowed the case to proceed only on the two contract theories, and made it known throughout the trial that tort concepts would not be allowed."

### Intentional Interference

■ As pointed out by appellee, to establish a claim for intentional interference with a contract, the plaintiff has the burden of showing (1) the existence of a contract, (2) the defendant's knowledge of the contract, (3) the intentional and improper interference inducing or causing a breach, and (4) the resulting damage. *First Wyoming Bank v. Mudge,* 748 P.2d 713, 715 (Wyo.1988).

■ The contract allegedly interfered with here is one between appellant and the Wyoming Farm Loan Board. It is contended that the failure to renew appellant's loan interfered with appellant's ability to make payment on a loan from the Board. Not only can the lack of legal nexus between the two loans negate the presence of an "improper" interference, but any interference is permitted if made in good faith to protect an economic interest. *Four Nines Gold, Inc. v. 71 Construction, Inc.,* 809 P.2d 236, 238 (Wyo.1991).

### Bad Faith

A tort claim of "bad faith" can be asserted only by a party to a contract or by a third party beneficiary to an enforceable contract. *McCullough v. Golden Rule Ins. Co.,* 789 P.2d 855 (Wyo.1990); *Darlow v. Farmers Insurance Exchange,* 822 P.2d 820 (Wyo.1991); *Herrig v. Herrig,* 844 P.2d 487 (Wyo.1992). As reflected *supra,* appellant did not have an enforceable contract with the appellee bank requiring the renewal of his note. Nor was he a third party beneficiary to a contract between the appellee bank and another party.

Since there was no issue of fact, the district court did not err in its ruling on the legal questions which resulted in the grant of summary judgment on the tort claims and in its refusal to allow amendment of the complaint to include such claims.

Affirmed.

CARDINE, Justice, dissenting.

I would reverse the judgment not withstanding the verdict (JNOV). I have no problem with the bank examining the borrower's finances, requiring financial statements and disclosures. But when the bank becomes involved in the ranch operation with advice and requirements concerning numbers and kinds of livestock to run, leasing pasture, obtaining a long-term loan from the Farm Loan Board, and the sale of

livestock, the bank may then become a participant in the operation of the ranch and incur obligations and duties that would not otherwise exist. I acknowledge that the facts concerning what occurred between these parties was hotly disputed—but resolution of these disputed facts was for the jury.

Finally, the trial court stated that if the JNOV were not appropriate, it would have granted a new trial upon the question of damages. That, for me, is a preferable result in this case. Consequently, I dissent.